In the Matter of the **ESTATE OF Wava F. LAMB, Deceased.**

**S. Duane LAMB, Claimant–Appellant.**

No. 96–2171.

Court of Appeals of Iowa.

June 24, 1998.

Kevin P. Shea of Shea Law Offices, Cedar Rapids, for appellant.

D.J. Smith of King, Smith & Boresi, Cedar Rapids, for appellee executor.

Arthur A. Neu and A. Eric Neu of Neu, Minnich, Comito & Hall, P.C., Carroll, for appellees Lamb, Ball, and Burdock.

Considered by SACKETT, P.J., and HUITINK and STREIT, JJ.

HUITINK, Judge.

Duane Lamb appeals from the district court's order approving executors' final report and application for discharge.

### I. Background Facts and Proceedings.

Wava Lamb died March 6, 1995. On August 21, 1995, a Petition for Probate of Will and Appointment of Executor of Wava Lambs' Estate was filed by Douglas Lamb, Donna Bell, and Helen Sullivan (petitioners). They alleged Wava made and executed a will on a date unknown to them. They also alleged Duane Lamb, the nominated executor in this will, possessed her will and failed or refused to offer it for probate.

On August 24, 1995, the district court issued an order setting a September 29, 1995, hearing on the petitioners' application to compel Duane to deliver Wava's will to the court. Although this order made no express provision for notice or service upon interested parties, the record indicates Duane received a copy of the application to compel production of Wava's will and notice of hearing by mail three weeks before the hearing date.

The application to compel was heard and submitted on the scheduled date. Duane appeared at the hearing with his attorney. His motion to continue the hearing to prepare a jurisdictional challenge was denied. The district court's order entered at the conclusion of the hearing provides:

> Respondent [Duane] testified he did not know if there was a will but that if there was one it was in his briefcase at his home in Ely, Iowa. The court declared a recess whereupon Respondent went home and returned with his briefcase. Court convened and Respondent testified that the will was not in the briefcase, but that it could be in a pile of papers in his bedroom which he had not had time to review.

This order includes no finding Duane had custody of Wava's will and there is no order for Duane to produce it.

Because the interested parties appearing at the September 29 hearing could not agree on the estate's personal representative, the district court in the same order appointed Brenton Bank & Trust Co. of Cedar Rapids (Brenton) to serve in that capacity. Brenton subsequently obtained a copy of Wava's November 2, 1988 will from the lawyer who drafted it and filed a petition to establish it as a lost will. Brenton's petition was granted on November 13, 1995, and a copy of Wava's 1988 will was admitted to probate.

The probate inventory prepared and filed by Brenton lists various joint accounts totaling $50,191 Wava owned with Duane as joint tenants at her death. Schedule C of the inventory included a mortgage and promissory note representing Wava's proceeds from the sale of a residential property Duane sold for her as attorney-in-fact.

After Brenton's appointment, the petitioners and their attorney applied for an order authorizing the estate to reimburse them for attorney fees and expenses resulting from their application to compel Duane to deliver Wava's will to the court. Duane filed a "motion to dismiss" this application, claiming the district court did not have jurisdiction to consider the petitioners' request for fees and expenses. The district court overruled Duane's motion to dismiss without addressing his jurisdictional claim. The merits of this application were not addressed until the hearing on Brenton's final report.

The record also includes Duane's claim against the estate for: " Amounts advanced on behalf of the decedent in order to accumulate her estate to a point to allow decedent to become self supporting plus $1000 per year for labor and expenses." Duane's itemization of his claim included a list of expenditures he allegedly made on Wava's behalf from 1989–1991, totaling $68,943.59. The executor's disallowance of Duane's claim dated March 7, 1996, included a notice informing Duane his claim was barred unless he requested a hearing within twenty days. Duane did not request a hearing.

The executor's Final Report and Application for Discharge was filed June 27, 1996. The report proposed an equal distribution of the estate's remaining assets to Wava's four children. The executor also proposed to reduce Duane's share by $4497.11, by charging his share for expenses itemized in the final report. This amount included two insurance checks Duane cashed totaling $1014.96, payable to Wava, a $106 research fee incurred to reconstruct Wava's checking account, a $16.02 Federal Express bill incurred to preserve insurance coverage on estate property, note payments of $2190.15 Duane collected for the estate and retained, and additional inheritance taxes of $1170 attributable to Duane's share because he was the named beneficiary of an annuity Wava owned at her death.

The executor's proposed distribution included cash distributions to fund Douglas, Donna, and Helen's entire shares. Duane's share was to be partially funded with cash and the remainder by an in-kind distribution of the promissory note and mortgage interest in the residence Duane sold on a contract for

Wava as her attorney-in-fact. The district court set a hearing on Brenton's final report and provided for notice by ordinary mail to the interested parties.

After receipt of this notice, Duane filed an "Objection to Final Report and Counterclaim." Duane objected to the executor's charges against his distributive share and the proposed distribution of Duane's share. Duane's counterclaim was the same as that "set forth in his claim in probate filed March 5, 1996." Duane also claimed all joint tenancy property as Wava's surviving joint tenant.

Duane also filed an "Answer to Application and Counterclaim" prior to the date set for hearing on the final report. In this pleading, Duane disputed the petitioners' claim he was personally liable for the fees and expenses relating to their application to compel delivery of Wava's will. Duane also restated his claim for expenses he allegedly advanced on Wava's behalf and petitioners were personally liable to him for reimbursement of these expenses. The petitioners filed a reply to Duane's pleading denying his factual allegations and reasserting their entitlement to reimbursement for their estate-related expenses. Brenton also responded to Duane's counterclaims denying liability because Duane's claims were barred by his failure to request a hearing following Brenton's notice disallowing his claim in March 1996. Brenton took no position regarding the petitioners' claim for fees and expenses.

Brentons "Final Report and Application for Discharge" and Duane's objections to the final report and counterclaims were set for hearing on September 10, 1996. On that date, Brenton and the petitioners appeared with their attorneys. Duane also appeared with his attorney. Duane objected to consideration of the petitioners' application for fees and expenses because it was not included in the matters scheduled for hearing on that date.

The district court overruled Duane's objection and proceeded to hearing on the petitioners' reimbursement claim, final report, and Duane's counterclaim. In its ruling, the district court accepted Brenton's proposal to reduce Duane's share, but limited Brenton's retainer of his share to $1014 of insurance proceeds and $2170 of note payments he

retained. Brenton's request for credit against Duane's share for research fees, a Federal Express bill, and additional Iowa inheritance tax was denied. The court ordered Duane's share be further reduced by $3133 for attorney fees and expenses the petitioners incurred in their attempt to compel delivery of Wava's will and that this amount be paid to the petitioner's attorney by the executor.

Brenton's proposed distribution, with the foregoing adjustments, was approved by the district court. Consequently, Duane's distributive share included cash, the note and mortgage referred to earlier, plus an additional $5000 to compensate him for the court's discounted value of the note and mortgage.

On appeal Duane renews his jurisdictional challenges to the district courts rulings on the petitioners' applications, his counterclaims, and Brenton's final report. Duane also challenges the distribution of estate assets approved by the district court.

## II. Scope of Review.

The matters before us were resolved in probate proceedings for final settlement of Wava Lamb's estate. Our review is therefore de novo. Iowa Code § 633.33.

## III. Duanes Jurisdictional Claims.

The gist of Duane's jurisdictional claims is his dispute with the petitioners over fees and expenses relating to their application to compel production of Wava's will was not essential to probate of her estate and therefore outside of the district court's probate jurisdiction. We disagree.

The district court sitting in probate has jurisdiction of the probate and contest of wills, administration, settlement, and distribution of decedent's estates. Iowa Code 633.10(1). Because probate proceedings are in rem, the presence of estate property in Iowa implicates the district court's subject matter jurisdiction. Iowa Code § 633.30; In re Estate of Price, 230 Iowa 1228, 1234, 300 N.W. 542, 545 (1941). The district court has broad discretion to enter orders setting the time and place of hearing probate matters

and manner of service of notice on interested parties. Iowa Code § 633.40 et seq. This discretion is subject to the due process requirement that the manner and time of service be reasonably calculated to apprise the interested parties of the proceedings and give them a reasonable time to appear and be heard. *In re Estate of Lemke*, 216 N.W.2d 186, 189 (Iowa 1974). All probate orders entered by the district court are final with respect to all parties notified of the proceedings including those who appear without notice. Iowa Code § 633.31. The district court's probate jurisdiction, however, does not include dispute over matters unrelated or nonessential to the administration of a decedent's estate. *See Estate of Randeris v. Randeris*, 523 N.W.2d 600, 604 (Iowa App. 1994); *Matter of Guardianship of Matejski*, 419 N.W.2d 576, 578 (Iowa 1988); *Davis v. Travelers Insurance Co.*, 196 N.W.2d 526, 528–29 (Iowa 1972).

■ The record indicates Wava was a resident Iowa property owner when she died. As a result, the district court's subject matter and probate jurisdiction were clearly implicated.

■ We also reject Duane's claim that the petitioner's request for attorney fees and expenses related to their efforts to compel delivery of Wava's will was a private dispute outside of the district court's probate jurisdiction. Iowa Code section 633.285 provides:

After being informed of the death of the testator, the person having custody of the testator's will shall deliver it to the court having jurisdiction of the testator's estate. Every person who willfully refuses or fails to deliver a will after being ordered by the court do so shall be guilty of contempt of court. The person shall also be liable to any person aggrieved for the damages which may be sustained by such refusal or failure.

The rights, duties, and remedies included within the terms of this statute cannot be fairly described as matters nonessential to or unrelated to rights derived from an interest in a decedent's estate. We hold that an application to compel delivery of a decedent's will and recovery of resulting attorney fees and expenses fall within the district court's

probate jurisdiction and the district court properly considered petitioner's application.

■ The record also indicates Duane was an Iowa resident at all times material to these proceedings. He received notice of the time and place of each hearing set by the district court and a copy of the applications which were the subject of the scheduled proceedings. His claim that the district court lacked personal jurisdiction to resolve this dispute, under these circumstances, is without merit.

*IV. Final Settlement Proceedings.*

■ *A. Petitioner's application for Attorney Fees.* Duane initially claims the district court should not have considered the petitioner's application for attorney fees and expenses because it was not among the matters included in the notice of hearing on Brenton's final report. We find it unnecessary to address this issue because the record fails to support petitioners' entitlement to reimbursement for these expenses from Duane. As noted earlier, the order entered following the hearing on petitioners' application to compel delivery of Wava's will made no finding that Duane had custody of Wava's will. Moreover, Duane was never ordered to deliver Wava's will to the court.

The evidence does not support a finding that Duane had custody of Wava's will or that he refused or failed to deliver it to the court. In the absence of these predicate determinations, the petitioners were not entitled to fees and expenses from Duane. The district court erred when it concluded otherwise and Duane's share should not have been reduced by the amount of attorney fees and expenses awarded.

■ *B. Duane's Claim to Jointly Held Property.* Duane's objections to the final report included his claim that he was entitled to the proceeds of all accounts he owned in joint tenancy with Wava. Brenton disputed Duane's entitlement citing his voluntary delivery of the proceeds of these accounts to the executor and his failure to timely file a claim against the estate for their return.

■ We reject the notion that Duane's claim to jointly owned funds is barred by his

failure to timely file a claim against the estate. Iowa Code section 633.410, the non-claims statute imposing a time limit on filing claims against the estate, is not implicated under these circumstances. Duane's objection is properly characterized as an effort to recover property. Because it is not a claim within the context of section 633.410, Duane's claim to the disputed funds was properly raised by an objection to Brenton's final report. *Shivvers v. Mueller*, 340 N.W.2d 586, 589 (Iowa 1983)(citing *Estate of Conner*, 240 Iowa 479, 487, 36 N.W.2d 833, 838 (1949)).

The joint tenancy property in dispute includes two checking accounts and an annuity account naming Duane as Wava's beneficiary on her death. The value of these accounts on the date of death was $50,191.

The record indicates Duane withdrew these funds after Wava died and issued checks for the balance of these and other accounts to Brenton. Brenton's trust officer testified:

Q. Up until the filing of this objection to the final report, did he ever claim that the money should not have been turned over to you and that it was indeed his money instead?

A. To my face he told me quite the contrary and, until he filed this application ... I had no idea that he considered any of that money his because I asked him if this was his mother's money and he said it was. He said—I said do you want it payable to the estate. He said, thats how the checks are payable, yes.

Based on this understanding Brenton treated these funds as assets of Wava's estate subject to distribution under the terms of her will. Additionally, Brenton prepared and filed an inheritance tax return claiming all of the funds were equally distributable to Wava's four children.

A joint tenancy exists when a bank account in two names is expressly made payable to either or to the survivor. *In re Estate of Roehlke*, 231 N.W.2d 26, 28 (Iowa 1975). The determinative question is whether the person establishing these accounts intended to create a joint tenancy. *Id.*

Duane, for many years before Wava died, managed her financial affairs as her attor-ney-in-fact. According to his testimonial version, Duane established the disputed accounts by depositing funds belonging to both Wava and himself. Because there is no question these accounts were jointly owned, the issue is whether Duane, as the depositor of these funds and Wava's attorney-in-fact, intended to create a joint tenancy.

We find the evidence in this case supports Brenton's determination that no joint tenancy with rights of survivorship was intended. The weight of the evidence indicates Duane placed his name on these accounts as a matter of administrative convenience in the management of Wava's affairs. This conclusion is fortified by Duane's voluntary delivery of these funds to Brenton and his statement that the proceeds of the accounts belonged to the estate. Accordingly, the disputed joint tenancy accounts were properly included as assets of Wava's estate subject to distribution under the terms of her will.

**C. Duane's Counterclaims.** Duane concedes that his counterclaim filed with his objection to Brenton's final report is the same as his earlier claim disallowed by the executor. Because Duane failed to file a request for a hearing following Brenton's denial of his claim, it is forever barred. Iowa Code § 633.442. The district court properly denied Duane's counterclaim.

Duane's counterclaim against the petitioners sought to establish their personal liability for reimbursement of expenditures he made on Wava's behalf. Because his claims of personal liability involve rights or duties unrelated to the administration of Wava's estate, the district court sitting in probate lacked jurisdiction to consider this counterclaim. *See Davis v. Travelers Insurance Co.*, 196 N.W.2d at 528–29.

***Summary.*** The district court's order approving Brenton's final report and application for discharge is modified by striking the $3133 offset against Duane's share to reimburse the estate for fees paid to petitioners' attorney. The remainder of the order is affirmed, including its provision for payment of petitioners' attorney fees by the estate. We reach this conclusion because that portion of the district court's order providing for payment of petitioners' fees and expenses by

the estate was not an issue raised by the parties to this appeal.

**AFFIRMED AS MODIFIED.**